(Slip Opinion) OCTOBER TERM, 2005 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## WILL ET AL. *v.* HALLOCK ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 04–1332.  Argued November 28, 2005—Decided January 18, 2006

In a warranted search of Susan and Richard Hallocks' residence, Customs Service agents seized computer equipment, software, and disk drives.  No criminal charges were ever brought, but the equipment was returned damaged, with all of the stored data lost, forcing Susan to close her computer software business.  She sued the United States under the Federal Tort Claims Act, invoking the waiver of sovereign immunity, 28 U. S. C. §1346, and alleging negligence by the customs agents in executing the search.  While that suit was pending, Susan also filed this action against the individual agents under *Bivens* v. *Six Unknown Fed. Narcotics Agents,* 403 U. S. 388, alleging that the damage they caused to her computers deprived her of property in violation of the Fifth Amendment's Due Process Clause.  After the District Court dismissed the first suit on the ground that the agents' activities fell within an exception to the Tort Claims Act's waiver of sovereign immunity, §2680(e), the agents moved for judgment in the *Bivens* action.  They relied on the Tort Claims Act's judgment bar, §2676, which provides that "the judgment in an action under 1346(b) . . . constitute[s] a complete bar to any action . . . against the employee of the government whose act or omission gave rise to the claim."  The District Court denied the motion, holding that dismissal of the Tort Claims Act suit against the Government failed to raise the Act's judgment bar.  The Second Circuit affirmed, after first ruling in favor of jurisdiction under the collateral order doctrine.  Under this doctrine, appellate authority to review "all final decisions of the district courts," §1291, includes jurisdiction over "a narrow class of decisions that do not terminate the litigation," but are sufficiently important and collateral to the merits that they should "nonetheless be treated as 'final,'" *Digital Equipment Corp.* v. *Desktop Direct, Inc.,* 511

U. S. 863, 867.

*Held:* A refusal to apply the Federal Tort Claims Act's judgment bar is not open to collateral appeal. Pp. 4–9.

    (a) Three conditions are required for collateral appeal: the order must "[1] conclusively determine the disputed question; [2] resolve an important issue completely separate from the merits . . . , and [3] be effectively unreviewable on appeal from a final judgment." *Puerto Rico Aqueduct and Sewer Authority* v. *Metcalf & Eddy, Inc.,* 506 U. S. 139, 144. Those conditions are "stringent." *Digital Equipment, supra,* at 868. Unless they are kept so, the underlying doctrine will overpower the substantial finality interests §1291 is meant to further. Pp. 3–4.

    (b) Among the "small class" of orders this Court has held to be collaterally appealable are those rejecting absolute immunity, *Nixon* v. *Fitzgerald,* 457 U. S. 731, 742, qualified immunity, *Mitchell* v. *Forsyth,* 472 U. S. 511, 530, and a State's Eleventh Amendment immunity claim, *Puerto Rico Aqueduct, supra,* at 144–145. In each of these cases, the collaterally appealing party was vindicating or claiming a right to avoid trial, in satisfaction of the third condition: unless the order to stand trial was immediately appealable the right would be effectively lost. However, to accept the generalization that any order denying a claim of right to prevail without trial satisfies the third condition would leave §1291's final order requirement in tatters. See *Digital Equipment, supra,* at 872–873. Pp. 4–5.

    (c) Thus, only some orders denying an asserted right to avoid the burdens of trial qualify as orders that cannot be reviewed "effectively" after a conventional final judgment. The further characteristic that merits collateral appealability is "a judgment about the value of the interests that would be lost through rigorous application of the final judgment requirement." *Digital Equipment, supra,* at 878–879. In each case finding appealability, some particular value of a high order was marshaled in support of the interest in avoiding trial, *e.g.,* honoring the separation of powers, *Nixon, supra,* at 749, 758, preserving the efficiency of government and the initiative of its officials, *Mitchell, supra,* at 526, and respecting a State's dignitary interests, *Puerto Rico Aqueduct, supra,* at 146. It is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest that counts. *Coopers & Lybrand* v. *Livesay,* 437 U. S. 463, 468. Pp. 5–7.

    (d) The customs agents' claim here does not serve a weighty public objective. This case must be distinguished from qualified immunity cases. The nub of such immunity is the need to induce government officials to show reasonable initiative when the relevant law is not "clearly established," *Harlow* v. *Fitzgerald,* 457 U. S. 800, 817; a

quick resolution of a qualified immunity claim is essential. There is, however, no such public interest at stake simply because the judgment bar is said to be applicable. It is the avoidance of litigation for its own sake that supports the bar, and if simply abbreviating litigation troublesome to government employees were important enough, §1291 would fade out whenever the government or an official lost in an early round. Another difference between qualified immunity and the judgment bar lies in the bar's essential procedural element. While a qualified immunity claim is timely from the moment an official is served with a complaint, the judgment bar can be raised only after a case under the Tort Claims Act has been resolved in the Government's favor. The closer analogy to the judgment bar is the defense of res judicata. Both are grounded in the perceived need to avoid duplicative litigation, not in a policy of freeing a defendant from any liability. But this rule of respecting a prior judgment by giving a defense against relitigation has not been thought to protect values so important that only immediate appeal can effectively vindicate them. See *Digital Equipment, supra,* at 873. Pp. 7–9.

387 F. 3d 147, vacated and remanded.

SOUTER, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 04–1332

RICHARD WILL, ET AL., PETITIONERS *v.* SUSAN HALLOCK ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[January 18, 2006]

JUSTICE SOUTER delivered the opinion of the Court.

The authority of the Courts of Appeals to review "all final decisions of the district courts," 28 U. S. C. §1291, includes appellate jurisdiction over "a narrow class of decisions that do not terminate the litigation," but are sufficiently important and collateral to the merits that they should "nonetheless be treated as final," *Digital Equipment Corp.* v. *Desktop Direct, Inc.,* 511 U. S. 863, 867 (1994) (internal quotation marks omitted). The issue here is whether a refusal to apply the judgment bar of the Federal Tort Claims Act is open to collateral appeal. We hold it is not.

I

The complaint alleges that Susan Hallock owned a computer software business that she and her husband, Richard, operated from home. After information about Richard Hallock's credit card was stolen and used to pay the subscription fee for a child pornography Web site, agents of the United States Customs Service, investigating the Web site, traced the payment to Richard Hallock's card and got a warrant to search the Hallocks' residence.

With that authority, they seized the Hallocks' computer equipment, software, and disk drives. No criminal charges were ever brought, but the Government's actions produced a different disaster. When the computer equipment was returned, several of the disk drives were damaged, all of the stored data (including trade secrets and account files) were lost, and the Hallocks were forced out of business.

In July 2002, Susan Hallock and her company brought an action against the United States under the Federal Tort Claims Act, invoking the waiver of sovereign immunity, 28 U. S. C. §1346, and alleging negligence by the customs agents in executing the search. The merits of the claim were never addressed, for the District Court granted the Government's motion to dismiss, holding that the agents' activities occurred in the course of detaining goods and thus fell within an exception to the Act's waiver of sovereign immunity, §2680(e). *Hallock* v. *United States,* 253 F. Supp. 2d 361 (NDNY 2003).

While the suit against the Government was still pending, Susan Hallock filed this action against the individual agents under *Bivens* v. *Six Unknown Fed. Narcotics Agents,* 403 U. S. 388 (1971), alleging in her complaint that the agents had damaged her computers and thus deprived her of property including business income in violation of the Due Process Clause of the Fifth Amendment. After the District Court dismissed the first suit against the Government, the agents moved for judgment in the *Bivens* action, citing the judgment bar of the Tort Claims Act, that "the judgment in an action under 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." §2676.

The District Court denied the motion, holding that dismissal of the action against the Government under the Tort Claims Act was solely on a procedural ground, and

thus failed to raise the judgment bar. *Hallock* v. *Bonner,* 281 F. Supp. 2d 425, 427 (NDNY 2003). The Court of Appeals for the Second Circuit affirmed, after first finding jurisdiction under the collateral order doctrine. *Hallock* v. *Bonner,* 387 F. 3d 147 (2004). We granted certiorari to consider the judgment bar, 545 U. S. \_\_\_ (2005), but now vacate for want of appellate jurisdiction on the part of the Court of Appeals.

## II

The collateral order doctrine, identified with *Cohen* v. *Beneficial Industrial Loan Corp.,* 337 U. S. 541 (1949), is "best understood not as an exception to the 'final decision' rule laid down by Congress in §1291, but as a 'practical construction' of it." *Digital Equipment, supra,* at 867 (quoting *Cohen, supra,* at 546). Whereas 28 U. S. C. §1291 "gives courts of appeals jurisdiction over 'all final decisions' of district courts" that are not directly appealable to us, *Behrens* v. *Pelletier,* 516 U. S. 299, 305 (1996), the collateral order doctrine accommodates a "small class" of rulings, not concluding the litigation, but conclusively resolving "claims of right separable from, and collateral to, rights asserted in the action," *ibid.* (internal quotation marks omitted). The claims are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen, supra,* at 546.

The requirements for collateral order appeal have been distilled down to three conditions: that an order "'[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.'" *Puerto Rico Aqueduct and Sewer Authority* v. *Metcalf & Eddy, Inc.,* 506 U. S. 139, 144 (1993) (quoting *Coopers & Lybrand* v. *Livesay,* 437 U. S. 463, 468 (1978)). The conditions are "stringent," *Digital*

*Equipment, supra,* at 868 (citing *Midland Asphalt Corp.* v. *United States,* 489 U. S. 794, 799 (1989)), and unless they are kept so, the underlying doctrine will overpower the substantial finality interests §1291 is meant to further: judicial efficiency, for example, and the "sensible policy 'of avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise.'" *Firestone Tire & Rubber Co.* v. *Risjord,* 449 U. S. 368, 374 (1981) (quoting *Cobbledick* v. *United States,* 309 U. S. 323, 325 (1940)).

Accordingly, we have not mentioned applying the collateral order doctrine recently without emphasizing its modest scope. See, *e.g.*, *Digital Equipment,* 511 U. S., at 868 ("[T]he 'narrow' exception should stay that way and never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered . . . " (citation omitted)). And we have meant what we have said; although the Court has been asked many times to expand the "small class" of collaterally appealable orders, we have instead kept it narrow and selective in its membership.

## A

Prior cases mark the line between rulings within the class and those outside. On the immediately appealable side are orders rejecting absolute immunity, *Nixon* v. *Fitzgerald,* 457 U. S. 731, 742 (1982), and qualified immunity, *Mitchell* v. *Forsyth,* 472 U. S. 511, 530 (1985). A State has the benefit of the doctrine to appeal a decision denying its claim to Eleventh Amendment immunity, *Puerto Rico Aqueduct, supra,* at 144–145, and a criminal defendant may collaterally appeal an adverse ruling on a defense of double jeopardy, *Abney* v. *United States,* 431 U. S. 651, 660 (1977).

The examples admittedly raise the lawyer's temptation

to generalize. In each case, the collaterally appealing party was vindicating or claiming a right to avoid trial, in satisfaction of the third condition: unless the order to stand trial was immediately appealable, the right would be effectively lost. Those seeking immediate appeal therefore naturally argue that any order denying a claim of right to prevail without trial satisfies the third condition. But this generalization is too easy to be sound and, if accepted, would leave the final order requirement of §1291 in tatters. We faced this prospect in *Digital Equipment, supra,* an appeal from an order rescinding a settlement agreement. Petitioner asserted a "'right not to stand trial' requiring protection by way of immediate appeal," analogizing the rescission to a denial of immunity. *Id.,* at 869. We said no, however, lest "every right that could be enforced appropriately by pretrial dismissal [be] loosely . . . described as conferring a 'right not to stand trial.'" *Id.*, at 873. Otherwise, "almost every pretrial or trial order might be called 'effectively unreviewable' in the sense that relief from error can never extend to rewriting history." *Id.,* at 872.

> "Allowing immediate appeals to vindicate every such right would move §1291 aside for claims that the district court lacks personal jurisdiction, that the statute of limitations has run, that the movant has been denied his Sixth Amendment right to a speedy trial, that an action is barred on claim preclusion principles, that no material fact is in dispute and the moving party is entitled to judgment as a matter of law, or merely that the complaint fails to state a claim. Such motions can be made in virtually every case." *Id.,* at 873 (citations omitted).

## B

Since only some orders denying an asserted right to avoid the burdens of trial qualify, then, as orders that

cannot be reviewed "effectively" after a conventional final judgment, the cases have to be combed for some further characteristic that merits appealability under *Cohen;* and as *Digital Equipment* explained, that something further boils down to "a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement." 511 U. S., at 878–879 (citing *Van Cauwenberghe* v. *Biard,* 486 U. S. 517, 524 (1988)). See also *Lauro Lines s.r.l.* v. *Chasser,* 490 U. S. 495, 502 (1989) ("The importance of the right asserted has always been a significant part of our collateral order doctrine" (SCALIA, J., concurring)).

Thus, in *Nixon, supra,* we stressed the "compelling public ends," *id.*, at 758, "rooted in . . . the separation of powers," *id.*, at 749, that would be compromised by failing to allow immediate appeal of a denial of absolute Presidential immunity, *id.*, at 743, 752, n. 32. In explaining collateral order treatment when a qualified immunity claim was at issue in *Mitchell, supra,* we spoke of the threatened disruption of governmental functions, and fear of inhibiting able people from exercising discretion in public service if a full trial were threatened whenever they acted reasonably in the face of law that is not "clearly established." *Id.*, at 526. *Puerto Rico Aqueduct,* 506 U. S. 139, explained the immediate appealability of an order denying a claim of Eleventh Amendment immunity by adverting not only to the burdens of litigation but to the need to ensure vindication of a State's dignitary interests. *Id.*, at 146. And although the double jeopardy claim given *Cohen* treatment in *Abney, supra,* did not implicate a right to be free of all proceedings whatsoever (since prior jeopardy is essential to the defense), we described the enormous prosecutorial power of the Government to subject an individual "to embarrassment, expense and ordeal . . . compelling him to live in a continuing state of anxiety," *id.,* at 661–662 (internal quotation marks omitted); the

only way to alleviate these consequences of the Government's superior position was by collateral order appeal.

In each case, some particular value of a high order was marshaled in support of the interest in avoiding trial: honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interests, and mitigating the government's advantage over the individual. That is, it is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is "effectively" unreviewable if review is to be left until later. *Coopers & Lybrand,* 437 U. S., at 468.

C

Does the claim of the customs agents in this case serve such a weighty public objective that the judgment bar should be treated as an immunity demanding the protection of a collateral order appeal? One can argue, of course, that if the *Bivens* action goes to trial the efficiency of Government will be compromised and the officials burdened and distracted, as in the qualified immunity case: if qualified immunity gets *Cohen* treatment, so should the judgment bar to further litigation in the aftermath of the Government's success under the Tort Claims Act. But the cases are different. Qualified immunity is not the law simply to save trouble for the Government and its employees; it is recognized because the burden of trial is unjustified in the face of a colorable claim that the law on point was not clear when the official took action, and the action was reasonable in light of the law as it was. The nub of qualified immunity is the need to induce officials to show reasonable initiative when the relevant law is not "clearly established," *Harlow* v. *Fitzgerald,* 457 U. S. 800, 818 (1982); see also *Saucier* v. *Katz,* 533 U. S. 194, 202 (2001); a quick resolution of a qualified immunity claim is essential.

There is, however, no such public interest at stake simply because the judgment bar is said to be applicable. It is not the preservation of initiative but the avoidance of litigation for its own sake that supports the judgment bar, and if simply abbreviating litigation troublesome to Government employees were important enough for *Cohen* treatment, collateral order appeal would be a matter of right whenever the government lost a motion to dismiss under the Tort Claims Act, or a federal officer lost one on a *Bivens* action, or a state official was in that position in a case under 42 U. S. C. §1983, or *Ex parte Young,* 209 U. S. 123 (1908). In effect, 28 U. S. C. §1291 would fade out whenever the government or an official lost an early round that could have ended the fight.

Another difference between qualified immunity and the judgment bar lies in the bar's essential procedural element. While a qualified immunity claim is timely from the moment an official is served with a complaint, the judgment bar can be raised only after a case under the Tort Claims Act has been resolved in the Government's favor. If a *Bivens* action alone is brought, there will be no possibility of a judgment bar, nor will there be so long as a *Bivens* action against officials and a Tort Claims Act against the Government are pending simultaneously (as they were for a time here). In the present case, if Susan Hallock had brought her *Bivens* action and no other, the agents could not possibly have invoked the judgment bar in claiming a right to be free of trial. The closer analogy to the judgment bar, then, is not immunity but the defense of claim preclusion, or res judicata.

Although the statutory judgment bar is arguably broader than traditional res judicata, it functions in much the same way, with both rules depending on a prior judgment as a condition precedent* and neither reflecting a

————————

* The right to be free of double jeopardy is subject to an analogous

policy that a defendant should be scot free of any liability. The concern behind both rules is a different one, of avoiding duplicative litigation, "multiple suits on identical entitlements or obligations between the same parties." 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §4402, p. 9 (2d ed. 2002) (internal quotation marks omitted). But this rule of respecting a prior judgment by giving a defense against relitigation has not been thought to protect values so great that only immediate appeal can effectively vindicate them. As we indicated in *Digital Equipment*, in the usual case, absent particular reasons for discretionary appeal by leave of the trial court, a defense of claim preclusion is fairly subordinated to the general policy of deferring appellate review to the moment of final judgment. 511 U. S., at 873.

The judgment bar at issue in this case has no claim to greater importance than the typical defense of claim preclusion; and we hold true to form in deciding what *Digital Equipment* implied, that an order rejecting the defense of judgment bar under 28 U. S. C. §2676 cries for no immediate appeal of right as a collateral order.

We vacate the judgment of the Court of Appeals and remand with instructions to dismiss the appeal for lack of jurisdiction.

———————

condition, that jeopardy have attached in a prior proceeding, *Monge* v. *California,* 524 U. S. 721, 728 (1998), a characteristic that distinguishes the Fifth Amendment right from other immunities mentioned above. But, as we explained, double jeopardy deserves immunity treatment under §1291 owing to the enormous advantage of a government prosecutor who chooses to go repeatedly against an individual.