FILED
United States Court of Appeals
Tenth Circuit

January 4, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

AURARIA STUDENT HOUSING AT
THE REGENCY, LLC, a Colorado
limited liability company,

   Plaintiff - Appellee,

  v.

CAMPUS VILLAGE APARTMENTS,
LLC, a Delaware limited liability
company,

   Defendant - Appellant.

_____

UNITED STATES OF AMERICA;
FEDERAL TRADE COMMISSION,

   Amici Curiae.

No. 11-1569

(D.C. No. 1:10-CV-02516-WJM-KLM)
(D. Colorado)

---

**ORDER**

---

Before **HARTZ**, **MURPHY**, and **HOLMES**, Circuit Judges.

---

**I. Introduction**

  Defendant-Appellant Campus Village Apartments, LLC ("Campus

Village") appeals the denial of its motion to dismiss the complaint of Plaintiff-

Appellee Auraria Student Housing at the Regency, LLC ("Regency"). Regency's

complaint alleges Campus Village conspired with the University of Colorado, Denver (the "University") to monopolize the provision of student housing in violation of Section 2 of the Sherman Act. *See* 15 U.S.C. § 2. Regency moved to dismiss Campus Village's appeal, arguing this court lacks subject matter jurisdiction because the district court's denial of Campus Village's motion to dismiss is not a final order under 28 U.S.C. § 1291. Campus Village argues in response that this court has jurisdiction under the collateral order doctrine set forth in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). Having considered the parties' briefing and argument on this issue, this court grants the motion to dismiss.

## II.    Background

Regency operates an apartment complex approximately two miles from the University's downtown Denver campus. Campus Village is a Delaware limited liability company which operates an apartment complex ("Campus Village Apartments") located approximately one-half mile from the University's campus. Pursuant to an agreement between the University and Campus Village, most full-time students are required to reside in the Campus Village Apartments for their first two semesters of enrollment. Regency brought suit against Campus Village, alleging the residency restriction amounted to an illegal conspiracy to monopolize in violation of Section 2 of the Sherman Act. Campus Village moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing the agreement creating

the residency restriction was authorized by a clearly articulated and affirmatively expressed state policy to displace competition with regulation, and therefore was not subject to the Sherman Act. *See Town of Hallie v. City of Eu Claire*, 471 U.S. 34, 38–40 (1985); *Parker v. Brown*, 317 U.S. 341, 350–51 (1943).

In *Parker*, the Supreme Court held the Sherman Act did not reach anticompetitive activities conducted by a state or its officers or agents. 317 U.S. at 350–51 ("We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature."). The doctrine, later termed "*Parker* immunity" or "state action immunity," is also available to private parties in certain circumstances. *See Town of Hallie*, 471 U.S. at 38–40; *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980); *Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495, 1498–1500 (10th Cir. 1997). This court recently held that for anticompetitive conduct to be shielded from antitrust liability by *Parker* immunity, the conduct must be "*at least* a foreseeable (if not explicit) result of state legislation." *Kay Elec. Co-op v. City of Newkirk*, 647 F.3d 1039, 1043 (10th Cir. 2011). The district court, applying *Kay*, concluded the Colorado legislation Campus Village relied upon did not make the agreement sufficiently foreseeable for Campus Village to be protected. It therefore denied the motion to dismiss. This appeal followed.

## III.    Discussion

This court's jurisdiction is limited to appeals "from all final decisions of the district courts of the United States."  28 U.S.C. § 1291.  "[A]n order denying a motion to dismiss is not a final appealable order if it ensures that litigation will continue in the District Court."  *Yousef v. Reno*, 254 F.3d 1214, 1217 (10th Cir. 2001) (quotation omitted).  The Supreme Court, however, has identified a "small class" of interlocutory orders that are subject to immediate review under § 1291.  *Cohen*, 337 U.S. at 546.  Under this collateral order doctrine, for a non-final order to be immediately appealable, it must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment."  *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quotations omitted).[1]  The Court has clarified that the third condition is not satisfied merely by demonstrating interlocutory review is necessary to avoid trial: "Those seeking immediate appeal . . . naturally argue that any order denying a claim of right to prevail without trial satisfies the third condition.  But this generalization is too easy to be sound and, if accepted, would leave the final order requirement of § 1291 in tatters."  *Id.* at 351.  Thus, when determining whether an order is "effectively unreviewable"

---

[1]The Supreme Court has repeatedly emphasized the "modest scope" of the doctrine, thus far acknowledging only four types of orders which fall within its purview: orders rejecting absolute immunity, qualified immunity, Eleventh Amendment immunity, and double jeopardy claims.  *Will v. Hallock*, 546 U.S. 345, 350 (2006).

absent interlocutory review, "it is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts."  *Id.* at 353.

The circuits are split on the question whether the denial of *Parker* immunity is effectively unreviewable on appeal from a final judgment.  The Fourth and Sixth Circuits have held it is not.  *See S.C. State Bd. of Dentistry v. FTC*, 455 F.3d 436, 444 (4th Cir. 2006); *Huron Valley Hosp., Inc. v. City of Pontiac*, 792 F.2d 563, 567 (6th Cir. 1986).  The Fifth and Eleventh Circuits have held that it is.  *See Martin v. Mem'l Hosp.*, 86 F.3d 1391, 1397 (5th Cir. 1996); *Commuter Transp. Sys., Inc. v. Hillsborough Cnty. Aviation Auth.*, 801 F.2d 1286, 1289–90 (11th Cir. 1986).  Those courts holding the denial of *Parker* immunity is not immediately appealable have observed that, while denominated an "immunity," the doctrine is actually akin to a defense to a cause of action rather than an entitlement to avoid suit altogether.  *Huron Valley*, 792 F.2d at 567; *see also Kay*, 647 F.3d at 1042 ("[T]he term 'immunity' may be a bit strong since the Court held only that Congress *hadn't* covered state action, not that it *couldn't*.").  As a result, no rights are irrevocably lost by delaying review until a final judgment has been entered.  *Huron Valley*, 792 F.2d at 567.  Additionally, the Fourth Circuit has suggested the interests vindicated by *Parker* immunity do not fall within the narrow class of interests described in *Will* for which interlocutory review is appropriate.  *S.C. State Bd. of Dentistry*, 455 F.3d at 444 ("Simply put, *Parker* construed a statute.  It did not identify or articulate a constitutional or

common law 'right not to be tried.' *Parker*, therefore, recognizes a 'defense' qualitatively different from the immunities described in *Will*, which focus on the harms attendant to litigation itself.").

By contrast, the Fifth and Eleventh Circuits have held *Parker* immunity is more than a mere defense to liability and its denial is therefore subject to immediate review. *Martin*, 86 F.3d at 1395–96; *Commuter Transp. Sys.*, 801 F.2d at 1289–90. These circuits have concluded *Parker* immunity protects important dignitary and public interests which would be lost if a suit proceeded to trial. For example, in *Martin*, the Fifth Circuit analogized *Parker* immunity to Eleventh Amendment immunity insofar as each is designed "to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties, and to ensure that the States' dignitary interests can be fully vindicated." *Martin*, 86 F.3d at 1295–96. (quotations, alteration, and citation omitted). Additionally, the court noted *Parker* immunity, like qualified immunity, allows public officials to perform their duties without fear of legal consequences, including not only liability for money damages but also the disruptions which are often attendant to civil litigation, such as pretrial discovery. *Id.* at 1396; *see also* Phillip E. Areeda & Herbert Hovenkamp, *Fundamentals of Antitrust Law*, § 2.04b, at 2-48 (4th ed. 2011) ("The *Parker* doctrine is designed to be an immunity, not merely a defense that can be offered at trial.")

-6-

It is unnecessary to weigh in on the circuit split because this appeal presents a different question: whether the denial of *Parker* immunity is immediately appealable by private parties. On this question, the circuit split is much less pronounced. Even the Fifth Circuit, which otherwise extends interlocutory review to denials of *Parker* immunity, does not do so in cases involving private parties. *See Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 292 (5th Cir. 2000). Stressing the Supreme Court's repeated admonitions that the collateral order doctrine applies only to a narrow class of cases, the court in *Acoustic Systems* concluded the justifications for affording immediate review of the denial of *Parker* immunity to governmental entities are inapplicable to private parties. *Id.* at 291–93. The court also noted that in the context of qualified immunity, immediate appeal is available to governmental defendants but not private parties. *Id.* at 294 (citing authority from the First, Seventh, and Eighth Circuits); *see also Weise v. Casper*, 507 F.3d 1260, 1264 (10th Cir. 2007) (holding court lacked jurisdiction to hear interlocutory appeal of denial of motion to dismiss based on qualified immunity by defendants who were not public officials). The Fifth Circuit indicated it was unaware of any decision extending the collateral order doctrine to appeals by a private party claiming *Parker* immunity. *Acoustic Sys.*, 207 F.3d at 291.

Citing *Praxair, Inc. v. Florida Power & Light Co.*, 64 F.3d 609, 611 (11th Cir. 1995), Campus Village notes at least one other circuit has allowed

interlocutory review in cases in which a private party asserts *Parker* immunity. *Praxair*, however, is wholly devoid of any persuasive justification for its holding in this regard. Instead, it summarily cites two Eleventh Circuit cases extending *Parker* immunity to governmental entities without addressing whether the reasoning in those cases also extends to private parties. *See* 64 F.3d at 611. Since *Acoustic Systems* was decided, the Supreme Court has further emphasized that the collateral order doctrine reaches only a narrow class of cases. *Will*, 546 U.S. at 350. This court is persuaded by the reasoning in *Acoustic Systems* and declines to follow *Praxair*.

In *Will*, the Supreme Court noted that in every case in which it held the collateral order doctrine justified interlocutory review "some particular value of a high order was marshaled in support of the interest in avoiding trial." *Id.* at 352. Campus Village asserts just such a "value of a high order" with three illustrations, none of which are persuasive. First, Campus Village argues the underlying premise of Regency's action is offensive to the dignitary interests of the state of Colorado. In support of this argument Campus Village points to the complaint's allegations that it entered into an illegal conspiracy with the University and that the University's housing policy has "nothing whatever to do with attempting to further the educational, mental, physical, or social development" of the University's students. Campus Village cites no authority for the proposition that the mere inclusion of disquieting allegations in a complaint implicates the

dignitary interests of a sovereign state. To the contrary, the Supreme Court has indicated a state's dignitary interests are offended when it is forced to defend its actions as a defendant in federal court. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) ("The very object and purpose of the 11th Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." (quotation omitted)); *see also id.* at 146 n.5 ("The Eleventh Amendment is concerned not only with the States' ability to withstand suit, but with their privilege not to be sued."). Thus, the denial of *Parker* immunity to a private party is not inherently offensive to a state's dignitary interests.

Second, Campus Village argues the real targets of Regency's suit are the University's housing policy and the Colorado statutes, which it asserts constitute an affirmative expression of state policy favoring the residency restriction. This argument, however, presumes the correctness of Campus Village's position on the merits of its *Parker* immunity claim. But when determining whether a particular claim satisfies the *Cohen* requirements,

> we do not engage in an individualized jurisdictional inquiry. Rather, our focus is on the entire category to which a claim belongs. As long as the class of claims, taken as a whole, can be adequately vindicated by other means, the chance that the litigation at hand might be speeded, or a particular injustice averted, does not provide a basis for jurisdiction under § 1291.

*Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 605–06 (2009) (quotations, alteration, and citation omitted). Campus Village's second argument depends upon precisely the kind of "individualized jurisdictional inquiry" specifically deemed inappropriate in *Mohawk Industries*. It is therefore insufficient to justify interlocutory review under the *Cohen* doctrine.

Finally, Campus Village argues the action brought by Regency will entail "broad-reaching discovery" of a kind that is "peculiarly disruptive of effective government." *Martin*, 86 F.3d at 1396 (quotations omitted). Supporting this argument, Campus Village points to Regency's proposed scheduling order, which identifies as witnesses sixteen University officials, including the University's Chancellor, three of its Vice-Chancellors, and its Provost. Campus Village suggests the disruption to governmental functions imposed by such discovery is not diminished simply because the government deponents are not named as defendants. *Cf. Filarsky v. Delia*, 132 S. Ct. 1657, 1665–66 (2012) (extending qualified immunity to private individuals acting on behalf of the government and describing disruptive effects of suits against private parties performing governmental functions). This argument, too, is dependent upon the individual circumstances of the suit and fails to demonstrate that suits against private parties claiming *Parker* exemption from antitrust liability under *Parker* will categorically be sufficiently disruptive of governmental functions to justify interlocutory

review.[2] *See Mohawk Indus.*, 130 S. Ct. at 605–06. It does not justify invocation of the collateral order doctrine for immediate review.

The Supreme Court has repeatedly cautioned against expansion of the collateral order doctrine. *See United States v. Wampler*, 624 F.3d 1330, 1334 (10th Cir. 2010) ("In case after case in year after year, the Supreme Court has issued increasingly emphatic instructions that the class of cases capable of satisfying this 'stringent' test should be understood as 'small,' 'modest,' and 'narrow.'"). Extending the collateral order doctrine to private parties contesting an order denying *Parker* immunity does not serve a substantial public interest and would constitute precisely the type of expansion the doctrine discourages. *Will*, 546 U.S. at 353.

## IV. Conclusion

For the foregoing reasons, the order denying Campus Village's motion to dismiss is not an appealable final order under 28 U.S.C. § 1291. Campus Village's appeal is therefore **dismissed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

---

[2]A protective order is a more appropriate, orderly, and efficient means to mitigate disruptions to non-parties. *See* Fed. R. Civ. P. 26(c)(1).