**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KCOM, INC., a Colorado corporation
d/b/a Airport Value Inn & Suites,

     Plaintiff - Appellee,

v.

EMPLOYERS MUTUAL CASUALTY
COMPANY, an Iowa corporation,

     Defendant - Appellant.

No. 15-1218

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 14-CV-1854-RPM)**

---

L. Kathleen Chaney (Max S. Gad with her on the briefs), Lambdin & Chaney, LLP, Denver, Colorado, for Defendant-Appellant.

George A. Vaka, Vaka Law Group, Tampa Florida (Nancy A. Lauten, Vaka Law Group, Tampa, Florida, and William C. Harris and Brandee B. Bower, Merlin Law Group, P.A., Denver, Colorado, with him on the brief), for Plaintiff-Appellee.

---

Before **BRISCOE**, **McKAY**, and **BALDOCK**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

     The threshold question presented in this state law diversity action is whether we have appellate jurisdiction over the district court's non-final order denying confirmation of a property loss appraisal. We do not, and dismiss the appeal.

I.

In June 2012, a hailstorm damaged Plaintiff KCOM's motel. Soon a dispute arose between KCOM, the insured, and Defendant Employers Mutual Casualty (EMC), the insurer, over the extent of the damage. In October 2012, following receipt of an inspection report, KCOM submitted a proof of loss of $631,726.87. EMC admitted coverage but not the amount of loss. Dissatisfied, KCOM invoked the insurance contract's appraisal provision:

> If we [EMC] and you [KCOM] disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. . . . The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a. Pay its chosen appraiser; and
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we [EMC] will still retain our right to deny the claim.

Aplt's App. at 45.

During the appraisal process, which according to KCOM had gone awry (here the details are unimportant), KCOM sued EMC in Colorado state court seeking damages arising from EMC's allegedly unreasonable delay in failing to pay the full amount due under the policy. Count I of KCOM's complaint alleged EMC's breach of contract, Count II alleged unreasonable delay and denial of benefits, and Count III alleged bad faith breach of an insurance contract. EMC removed the suit to

2

federal district court on the basis of diversity jurisdiction. The district court stayed the matter pending completion of the appraisal process.

In October 2014, the umpire and EMC's appraiser (recall EMC had retained the latter pursuant to the policy's appraisal provision) agreed to an appraisal award of $208,445.57. KCOM objected to the award and refused EMC's tender. When KCOM refused to dismiss its lawsuit, EMC filed a motion to confirm the appraisal award in the district court. In its motion, EMC posited that the appraisal award was subject to the provisions of the Colorado Uniform Arbitration Act (CUAA), and therefore asked the court to confirm the award pursuant to Colo. Rev. Stat. § 13-22-222. KCOM opposed EMC's motion, and in its own motion for partial summary judgment asked the court to hold the CUAA inapplicable to the appraisal process and declare the appraisal award invalid due to procedural improprieties. In the alternative, KCOM moved to vacate the appraisal award pursuant to CUAA § 13-22-223. In an oral ruling delivered in June 2015, the district court summarily denied both parties' motions.

> My ruling is that . . .Colorado's Uniform Arbitration Act does not apply and that this [the policy's appraisal clause] is a contractual provision and it is a part of the overall dispute between the parties concerning the effects of the storm, the original hail storm, and then subsequent events.
> * * *
> [I]n this case in particular there are issues about what happened . . . in the course of the appraisal. And—so the motion to confirm the award is denied.
> * * *
> And . . . this partial summary judgment I'm denying that, I mean that's simply in part a response to the motion to confirm the award. . . . [M]y

3

view is that we are talking about a contract; it has an appraisal provision in it. Whether that contract provision affects the amount of recovery in this case is a matter to be decided.

And the issues concerning what happened during the appraisal process are factual questions that a jury will decide and not this Court.

Aplt's App. at 213–14.

A week later EMC filed a notice of appeal from the denial of its motion to confirm the appraisal award. Surprisingly, EMC cited the CUAA as the basis for federal appellate jurisdiction, telling us that "[p]ursuant to C.R.S. § 13-22-228, an order denying confirmation of an award is immediately appealable." EMC told us the same thing in its docketing statement. As a result, the Clerk of this Court, prior to briefing, entered an order directing EMC to "explain[] any federal law or rules that would permit the Court to exercise jurisdiction over this attempted appeal." EMC responded that because the appraisal process outlined in the insurance policy sufficiently resembled classic arbitration, the process fell within the purview of the Federal Arbitration Act (FAA). And the FAA, specifically 9 U.S.C. § 16(a)(1)(D), provides for an interlocutory appeal from the denial of a motion to confirm an arbitration award. The Clerk referred the jurisdictional question to this panel.

II.

Apparently having learned little from the Clerk's jurisdictional inquiry, EMC in its opening brief falls back into the error of its old ways and claims CUAA § 13-22-228 provides us with jurisdiction over its interlocutory appeal. EMC's

4

jurisdictional statement makes no reference to the FAA or other federal law. Instead, it reads: "This Court has jurisdiction over this appeal because appraisals pursuant to an insurance policy are arbitration pursuant to the [CUAA]. Consistent with the CUAA, EMC filed a motion to confirm the appraisal award, which was denied. The denial of a motion to confirm award is immediately appealable pursuant to C.R.S. § 13-22-228(1)(c)." Aplt's Br. at 2. Later, EMC reaffirms its view in the argument section of its brief: "The CUAA, rather than the FAA, is the applicable statute to rely on because, from the outset, this has been a diversity action." Id. at 43. Only in the final paragraph of its argument does EMC provide lip service to the FAA: "[T]he analysis under the FAA is the same as under the CUAA. That is, if the FAA only applies, that statute, too, states that an appeal may be taken from an order denying confirmation of an award." Id. at 44.

Let us begin our critique of EMC's faulty jurisdictional analysis by pointing out the obvious. As an inferior federal court established by Congress pursuant to Article III of the United States Constitution, we exercise limited subject matter jurisdiction. This is axiomatic. Inferior Article III courts "may only hear cases when empowered to do so by the Constitution *and* by act of Congress." Lindstrom v. United States, 510 F.3d 1191, 1193 (10th Cir. 2007) (emphasis added) (quoting Radil v. Sanborn Western Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004)); see also Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 115 (2009) (Thomas, J., concurring in part) ("The scope of federal appellate jurisdiction is a matter the

5

Constitution expressly commits to Congress, see Art. I, § 8, cl. 9 . . . .").  Simply put, a state legislature has no authority to prescribe federal court jurisdiction in diversity matters or otherwise.  In Aspen Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist., 353 F.3d 832, 837 (10th Cir. 2003), we explained that where the underlying substantive claim is based on state law, a proper Erie analysis establishes that federal rather than state law controls the appealability of the district court's order.[1]  Most assuredly, EMC's argument that Colorado state law provides this Federal Court with jurisdiction over its interlocutory appeal is a losing one.

We may exercise jurisdiction over EMC's present appeal *only if* federal law empowers us to do so.  This was the entire point of the Clerk's inquiry.  But apart from telling us the FAA can save the day because it is effectively the same law as the CUAA, EMC's jurisdictional argument is devoid of any substantive analysis.  EMC's analysis amounts to little more than the claim that the appraisal process in this case is the same thing as classic arbitration, followed by its claim that the district court's order denying confirmation of the appraisal award is immediately appealable whatever the source of our jurisdiction because federal and state law are interchangeable.  We disagree with the latter claim and express no opinion on the

---

[1]  We refer EMC's counsel to Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), and its progeny for an explanation of the law to be applied in federal diversity actions.  Here suffice to say that in such actions, we apply state substantive law and federal procedural law.  See Scottsdale Ins. Co. v. Tolliver, 636 F.3d 1273, 1278 (10th Cir. 2011).

6

former.  At this point, EMC is spared a summary dismissal only because we have an independent obligation to examine our own subject matter jurisdiction "even if the defendant has made no efforts—or very poor ones—to convince us."  Brown v. Buhman, __ F.3d __, ___ n.17, 2016 WL 2848510, at *11 n.17 (10th Cir. 2016); see also Ashcroft v. Iqbal, 556 U.S. 662, 671 (2009) ("Subject matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt.").

III.

CUAA § 13-22-222, under which EMC brought its motion to confirm, reads in its entirety:

> *After a party to an arbitration proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award* at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to § 13-22-220 or § 13-22-224 or is vacated pursuant to § 13-22-223.

Colo. Rev. Stat. § 13-22-222 (emphasis added).  By comparison, FAA § 9 provides for confirmation of an arbitration award under much narrower circumstances:

> *If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, . . . then at any time within one year after the award is made any party to the arbitration may apply to the court . . . for an order confirming the award*, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in §§ 10 and 11 of this title.

9 U.S.C. § 9 (emphasis added).

7

A.

Had EMC brought its motion to confirm the appraisal award under 9 U.S.C. § 9, and had the district court denied the motion, our appellate jurisdiction under 9 U.S.C. § 16(a)(1)(D) would be crystal clear.  See Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 627 (2009); Conrad v. Phone Directories Co., 585 F.3d 1376, 1385 (10th Cir. 2009).  No matter the merits of the underlying controversy, FAA § 16(a)(1)(D) undoubtedly provides for an interlocutory appeal from an order denying a motion to confirm brought under FAA § 9.  But for whatever reason—perhaps because FAA § 9 conditions judicial confirmation upon the parties' prior agreement to have judgment entered upon an award—EMC did not so move in the district court.  See P & P Indus., Inc. v. Sutter Corp., 179 F.3d 861, 866–67 (10th Cir. 1999) (holding "a district court has no power to confirm an arbitration award under § 9 of the FAA unless the parties have agreed, explicitly or implicitly, that any eventual arbitration award shall be subject to judicial confirmation").

In Conrad, we addressed whether FAA § 16(a)(1)(A) or (a)(1)(B) provided us with jurisdiction over an interlocutory appeal from the denial of a motion to dismiss premised on the existence of an arbitration agreement, despite defendant's failure to explicitly move to stay the litigation or compel arbitration under FAA § 3 or § 4. Recognizing our preference for "clear, bright-line rules" in jurisdictional matters, we held that "to properly invoke appellate jurisdiction under the Act, the movant must either *explicitly* move . . . pursuant to the [FAA], or it must be *unmistakably* clear

8

from the four corners of the motion that the movant seeks relief provided for in the FAA." Conrad, 585 F.3d at 1379, 1382 (emphasis added). We concluded that because "the essence of [defendant's] motion was not for relief under the FAA, . . . no § 16(a) appellate jurisdiction exist[ed] over the denial of that motion." Id. at 1386.

Here, EMC most certainly did not explicitly move pursuant to the FAA in the district court. Nor is it unmistakably clear from the four corners of its motion to confirm that EMC moved for relief provided for in the FAA. Quite the opposite is true. As its motion makes abundantly clear, EMC moved for relief only under the CUAA. That the CUAA and the FAA may overlap in some, even many, respects is immaterial. EMC was the master of its motion to confirm, and it simply did not invoke the FAA therein. EMC cannot now morph a motion brought under the CUAA into one brought under the FAA.

### B.

Stuck with a motion to confirm arising under Colorado state law, we suppose EMC could make the argument, albeit a novel one, that in enacting FAA § 16(a), Congress intended to authorize an interlocutory appeal from the denial of such motion. Section 16(a) provides in relevant part:

> (a) An appeal may be taken from—
>   (1) an order—
>       (A) refusing a stay of any action under § 3 of this title,
>       (B) denying a petition under § 4 of this title to order arbitration to proceed,

9

(C) denying an application under § 206 of this title to compel arbitration,
(D) confirming or denying confirmation of an award or partial award, or
(E) modifying, correcting, or vacating an award[.]

Specifically, EMC might seek to distinguish Conrad and argue subsection (D) provides for an interlocutory appeal of an order "confirming or denying confirmation of an award," regardless of whether the underlying motion for confirmation is made pursuant to the FAA or state law. This argument relies solely on the observation that subsections (A), (B), and (C) of § 16(a)(1) all expressly cross reference provisions of the FAA under which different sorts of motions relating to arbitration may be brought in the district court, while subsections (D) and (E) do not. Our reading of the FAA as a whole, however, dispels any assertion that Congress intended FAA §16(a) to be an avenue for interlocutory appeal of a motion to confirm brought under one of any fifty state laws, including CUAA § 13-22-222, a Colorado state statute with a far broader reach than FAA § 9. See Merrill Lynch v. Manning, 136 S.Ct. 1562, 1573 (2016) (observing that Supreme Court decisions "reflect a deeply felt and traditional reluctance to expand the jurisdiction of federal courts through a broad reading of jurisdictional statutes" (internal ellipses and quotation marks omitted)); Pre-Paid Legal Serv., Inc. v. Cahill, 786 F.3d 1287, 1290 (10th Cir. 2015) ("Federal courts interpret jurisdictional statutes narrowly.").

What the textual argument we have described initially fails to recognize is that FAA § 16(a)(1)(D) authorizes post-arbitration interlocutory appeals from orders

10

"confirming or denying confirmation of an award." Subsection (E) authorizes the same from orders "modifying, correcting, or vacating an award." Notably, subsections (D) and (E) account for the entirety of possible outcomes under FAA §§ 9, 10 and 11. Subsections (A), (B), and (C) meanwhile address pre-arbitration decisions thwarting the arbitration process entirely. Those subsections do not account for the entirety of outcomes under §§ 3, 4, or 206 of the FAA. Consistent therewith, FAA § 9(b) cites those same provisions in providing that an interlocutory appeal may *not* be taken from an order—

(1) granting a stay of any action under § 3 of this title;
(2) directing arbitration to proceed under § 4 of this title; [or]
(3) compelling arbitration under § 206 of this title[.]

Only with the addition of FAA § 9(b) are all possible outcomes, those favoring and those disfavoring arbitration under §§ 3, 4 and 206, accounted for.

Perhaps more indicative of a limited Congressional intent underlying FAA § 16 is the fact that such an expansive reading of subsection (a)(1)(D) would permit parties like EMC, on their way to an interlocutory appeal, to circumvent Congress's view expressed in FAA § 9 that to qualify for judicial confirmation, the parties must have previously agreed "that a judgment of the court shall be entered upon the award made pursuant to the arbitration." Similarly, such a reading would allow those same parties to avoid FAA § 9's one-year limitations period where applicable. To be sure, a party may move under state law in cases such as this, just as EMC did, and avoid the entirety of the FAA's *substantive* provisions, including those of § 9. But if it

11

does so, no interlocutory appeal pursuant to FAA § 16 is available. EMC cannot have its cake and eat it too.[2]

C.

Grasping at straws, EMC belatedly suggests in its reply brief that the collateral order doctrine is a convenient means of bypassing FAA § 9. The doctrine is a practical construction of the final judgment rule designed to "accommodate[] a '*small* class' of rulings, not concluding the litigation, but conclusively resolving 'claims of right separable from, and collateral to, rights asserted in the action.'" Will v. Hallock, 546 U.S. 345, 349 (2006) (emphasis added). The Supreme Court has "repeatedly stressed that the '*narrow*' exception should stay that way and never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated." Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868 (1994) (emphasis added) (internal citation omitted). For a non-final order to be immediately appealable, the doctrine requires the order (1) conclusively determine the disputed question, (2) resolve an important

---

[2] At oral argument, EMC indicated that if we conclude we lack jurisdiction over this appeal, it will simply return to the district court and again move for confirmation, but this time under FAA § 9. To prevail on such motion, EMC will have to establish that (1) the appraisal constitutes arbitration, (2) the parties agreed any award would be subject to confirmation, and (3) EMC is entitled to confirmation notwithstanding KCOM's claim that a tainted appraisal process requires that the award be vacated.

12

issue completely separate from the merits, and (3) be effectively unreviewable on appeal from a final judgment. Auraria Student Hous., LLC, v. Campus Vill. Apartments, 703 F.3d 1147, 1150 (10th Cir. 2013). Here we need only consider the third requirement to dispel any notion that the collateral order doctrine provides us with jurisdiction to hear EMC's appeal.

EMC states the purpose of its motion to confirm "was so that the parties did not have to litigate the amount of loss (and KCOM's breach of contract claim). In light of the district court's order, EMC may be forced to do so when it contends that the binding appraisal process and award mandate that it is not [required] to do so." Aplt's Reply Br. at 29. Unfortunately for EMC, we have squarely rejected the argument that a desire to avoid trial is alone sufficient to warrant invocation of the collateral order doctrine. "When determining whether an order is 'effectively unreviewable' absent interlocutory review, 'it is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts.'" Auraria Student Hous., 703 F.3d at 1150 (quoting Will, 546 U.S. at 353). "That a ruling 'may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment . . . has never sufficed.'" Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 107 (2009). To reason otherwise "would leave the final order requirement of § 1291 in tatters." Will, 546 U.S. at 351.

So what is the "substantial public interest" or "particular value of high order," that our failure to hear EMC's appeal will jeopardize? Id. at 352–53. EMC says the

13

district court's order will have a "significant impact" on the "discovery process." Aplt's Reply Br. at 29. According to EMC, "[b]ecause the appraisers have been deemed not to be arbitrators, KCOM may seek to compel them to testify regarding what happened during the appraisal process, something that would ordinarily be prohibited." Id. Consequently, EMC tells us we now must decide whether the insurance policy's appraisal provision is in effect an arbitration clause.

Not so fast. In support of its argument, EMC again cites state law, specifically CUAA § 13-22-214(4)(a), which generally provides an arbitrator is not competent to testify and may not be compelled to produce records in a collateral challenge to an arbitration award. But in diversity actions, "[d]iscovery is a procedural matter which is governed by the Federal Rules of Civil Procedure." Univ. of Texas v. Vratil, 96 F.3d 1337, 1340 n.3 (10th Cir. 1996). And neither Title 9 nor the federal rules appear to place any limits on the discovery that may be obtained from an arbitrator in the context of judicial proceedings. See Fed. R. Civ. P. 81(a)(6)(B) (stating the rules apply to Title 9 proceedings except to the extent Title 9 provides "other procedures").

Admittedly, no court to our knowledge, federal or state, has ever endorsed subjecting arbitrators to carte blanche discovery, and for good reason. Access to such unlimited discovery "would make arbitration not the end, but only one step in the progress of litigation." 2 Larry E. Edmonson, Domke on Commercial Arbitration § 27:14, at 29 (3d ed. 2015). "Courts have repeatedly condemned efforts to depose

14

members of an arbitration panel to impeach or clarify their awards." Legion Ins. Co. v. Ins. Gen. Agency, Inc., 822 F.2d 541, 543 (5th Cir. 1987). But neither have courts denied litigants an opportunity to obtain discovery from arbitrators where some objective basis suggests misconduct occurred during the arbitration *process*. See In re Andros Compania Maritima, S.A., 579 F.2d 691, 702 (2d Cir. 1978); Domke, § 27:14, at 26 n.1.

For what it's worth, the CUAA expressly endorses such limited discovery by providing an arbitrator can be required to tell his or her side of the story where a movant "makes a prima facie showing" of "[e]vident partiality" or "[m]isconduct" by the arbitrator. Colo. Rev. Stat. §§ 13-22-214(4)(b)(II) & 13-22-223(1)(b). According to KCOM's motion for summary judgment, which encompassed its motion to vacate the appraisal award, EMC throughout the appraisal process had improper ex parte communications with its retained appraiser, who together with the umpire signed the final award. KCOM further asserts the panel improperly refused to postpone the final award pending an independent inspection of the motel roof—an inspection KCOM says was necessary because EMC or its retained appraiser claimed a prior roofing sample was not actually taken from the motel's roof.

Of course, we do not decide the precise contours of discovery as an initial matter in this or any other case. The district court is responsible in the first instance for making such discretionary decisions when objections arise. Rather, the point is simply this: The public interest does not demand that we now review the district

15

court's order denying EMC's motion to confirm based on EMC's misguided notion that arbitrators are shielded from all discovery in suits challenging the arbitration process. Deferring review of the district court's order denying EMC's motion to confirm will not so imperil the interest EMC claims as to justify the cost of permitting an interlocutory appeal.

The Supreme Court's decision in Mohawk Indus. well illustrates our point. In that case, the Supreme Court acknowledged the sanctity of the attorney-client privilege but nevertheless held a district court's disclosure order adverse to the privilege was not immediately appealable under the collateral order doctrine. The Court reasoned that a post-judgment appeal would adequately protect the rights of those concerned: "Appellate courts can remedy the improper disclosure of privileged information in the same way they remedy a host of other erroneous evidentiary rulings; by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence." Mohawk Indus., 558 U.S. at 109. If the sanctity of the attorney-client privilege did not warrant application of the collateral order doctrine in Mohawk Indus., surely any non-uniform policy limiting the discovery that may be obtained from arbitrators in challenge to an award does not warrant our application of the doctrine to the non-final order denying EMC's motion to confirm. The district court's answer to the question of whether the appraisal process in this case constitutes arbitration will have to suffice for now.

16

\* \* \*

EMC's appeal is DISMISSED for want of appellate jurisdiction. We decline EMC's invitation to remand to the district court for the limited purpose of permitting EMC to seek certification for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

APPEAL DISMISSED; CAUSE REMANDED.