RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0165p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

WALTER J. HIMMELREICH,

*Plaintiff-Appellee*,

*v.*

FEDERAL BUREAU OF PRISONS et al.,

*Defendants*,

JANEL FITZGERALD,

*Defendant-Appellant*.

> No. 19-4146

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 4:10-cv-02404—Benita Y. Pearson, District Judge.

Argued: June 15, 2021

Decided and Filed: July 22, 2021

Before: MOORE, COLE, and GIBBONS, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** H. Thomas Byron III, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. J. Benjamin Aguiñaga, JONES DAY, Washington, D.C., for Appellee. **ON BRIEF:** H. Thomas Byron III, Anne Murphy, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. J. Benjamin Aguiñaga, JONES DAY, Washington, D.C., for Appellee.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.  This case arises from an assault upon Walter J. Himmelreich, a federal inmate, by another inmate while Himmelreich was incarcerated at FCI-Elkton.  Himmelreich's subsequent lawsuits alleged numerous claims against prison officials, including a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for retaliation in violation of the First Amendment.  Himmelreich claims that the captain at FCI-Elkton, Janel Fitzgerald, threatened to transfer him to a higher-level security institution if he filed a grievance regarding the assault and that she later admitted that she placed him in the Special Housing Unit ("SHU") for filing a claim under the Federal Tort Claims Act, thereby violating his First Amendment rights.  Fitzgerald moved for summary judgment only on the ground that there is no *Bivens* remedy for a First Amendment retaliation claim.  The district court denied her motion for summary judgment.

Fitzgerald appeals the district court's recognition of Himmelreich's *Bivens* claim for First Amendment retaliation and the district court's denial of summary judgment on that claim.  We **DISMISS** Fitzgerald's appeal for lack of jurisdiction because her appeal concerns neither a final order nor a non-final order entitled to review under the collateral order doctrine.  Given that we dismiss Fitzgerald's appeal for lack of jurisdiction, we will waive appellate fees with respect to her appeal.

**I. BACKGROUND**

On October 20, 2008, another inmate, Peter Macari, assaulted Himmelreich.  Himmelreich states in his complaint that, prior to the attack and while Macari was in the SHU, Macari had told prison officials that he "had a lot of stress in here."  R. 1 (Compl. ¶ 7) (Page ID #6).  Macari singled out persons convicted of child sexual offenses as the source of his stress, stating that he was "not able to live with pedophiles," and if released back into the prison's general population, he would "smash a pedophile."  *Id.*  Macari's comments targeting "pedophiles" were pertinent to Himmelreich, who had pleaded guilty to one count of producing

child pornography, *United States v. Himmelreich*, 265 F. App'x 100, 102 (3d Cir. 2008), and who, according to Himmelreich, was "reputedly, among the inmate community, one of the biggest pedophiles on the Elkton compound and [was] aware that other inmates have that perception of him," R. 1 (Compl. ¶ 8) (Page ID #6). On October 20, 2008, despite these comments, prison officials released Macari from the SHU to the general population. *Id.* ¶ 20 (Page ID #8). Later that day, Macari acted upon his comments targeting "pedophiles" and assaulted Himmelreich. *Id.* ¶¶ 28–36 (Page ID #9–10). In February 2009, Himmelreich filed his Tort Claim Notice with the Federal Bureau of Prisons. *Id.* ¶ 63 (Page ID #14).

Shortly after the assault, on November 14, 2008, Himmelreich alleges that Fitzgerald told him "in a threatening tone," that if he continued to complain about the assault "[she would] personally see that [he was] transferred to a penitentiary and [he would] more than likely be attacked and not just beat up" there. R. 47 (06/03/13 Pl.'s Resp. to Mot. for Summ. J. at 7) (Page ID #275). On March 5, 2009, prison officials placed Himmelreich in the SHU without explanation. R. 1 (Compl. ¶ 64) (Page ID #14). Sometime in April 2009, Himmelreich states that "Captain J. Fitzgerald, while making rounds in the SHU, yelled at [Himmelreich] through his door and so loud that the inmates in the surrounding cells could hear clear as a bell: 'You want to know why you're in here? You're in here because of the fuckin' Tort Claim you filed! That's why you're in here!'" *Id.* ¶ 66 (Page ID #15). Himmelreich remained in the SHU for sixty days until prison officials released him on May 4, 2009. *Id.* ¶ 64 (Page ID #14). Defendants counter that prison officials placed Himmelreich in the SHU for his own protection after he complained of threats from other inmates. R. 163 (05/30/19 Reply in Supp. of Defs.' Mot. for Summ. J. at 9) (Page ID #1648).

On February 11, 2010, Himmelreich filed a complaint against prison employees under the Federal Tort Claims Act ("FTCA") based on the October 20, 2008 assault and its aftermath. Complaint, *Himmelreich v. United States of America*, No. 4:10-cv-00307-BYP (N.D. Ohio Feb. 11, 2010). The district court granted the defendants' motion to dismiss Himmelreich's FTCA complaint because it came within the discretionary-function exception to the FTCA, 28 U.S.C. § 2680(a). Mem. of Op. & Order, *Himmelreich v. United States of America*, No. 4:10-cv-00307-BYP (N.D. Ohio Nov. 18, 2010).

While Himmelreich's FTCA complaint was pending, he filed another complaint against the defendants asserting several claims arising out of the October 20, 2008 assault, his subsequent medical care, and his placement in the SHU. R. 1 (Compl.) (Page ID #1–18). The district court dismissed Himmelreich's complaint pursuant to 28 U.S.C. § 1915(e), for failure to state a claim. R. 7 (03/11/11 Order) (Page ID #39–48). On appeal, we affirmed the district court's dismissal of most of Himmelreich's claims. We, however, vacated and remanded two claims to the district court because Himmelreich had plausibly pleaded the elements of a First Amendment retaliation claim and an Eighth Amendment failure-to-protect claim. *Himmelreich v. Federal Bureau of Prisons*, No. 11-3474 (6th Cir. May 7, 2012) (order). The defendants moved to dismiss Himmelreich's two remaining claims for failure to exhaust administrative remedies and for falling under the FTCA's judgment bar rule, which provides that a judgment in an FTCA action precludes other lawsuits against the individual defendants pursuant to 28 U.S.C. § 2676. R. 45-1 (04/26/13 Mot. for Summ. J.) (Page ID #237–43); R. 50 (06/18/2013 Reply to Pl.'s Resp. 5–9) (Page ID #325–29). The district court granted the defendants' motion for summary judgment. R. 53 (07/18/13 Order & Decision) (Page ID #431–37).

We reversed the district court's judgment and remanded for further consideration of Himmelreich's claims. *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576 (6th Cir. 2014), *aff'd and remanded sub nom. Simmons v. Himmelreich*, 136 S. Ct. 1843 (2016) (per curiam). We concluded that Himmelreich had raised a genuine dispute of material fact as to whether Fitzgerald's threats had rendered the administrative grievance process functionally unavailable and thus excused his failure to exhaust administrative remedies. *Id.* at 577–78. As for the import of the FTCA's judgment bar provision, we held that the district court's dismissal of Himmelreich's FTCA suit for lack of subject-matter jurisdiction did not trigger the FTCA's judgment bar rule. *Id.* at 578–80. The Supreme Court granted the defendants' petition for certiorari on the second issue to resolve a circuit split regarding whether the FTCA's judgment bar provision applies when the district court dismisses the FTCA suit for lack of subject-matter jurisdiction because the suit came within the discretionary-function exception, and the Court affirmed our decision. *Himmelreich*, 136 S. Ct. at 1846, 1850.

This brings us to the subject of this appeal.  The defendants again moved for summary judgment, this time on the grounds that prison employees were entitled to qualified immunity on Himmelreich's Eighth Amendment failure-to-protect claims, and that Himmelreich's First Amendment retaliation claim against Fitzgerald was not a cognizable *Bivens* damages action.  R. 142-1 (02/25/2019 Mem. in Supp. of Mot. for Summ. J.) (Page ID #715–52).  The defendants notably did not raise qualified immunity as a defense to Himmelreich's *Bivens* damages action against Fitzgerald in their opening motion for summary judgment, although they subsequently included it in their reply brief.  R. 163 (05/30/19 Reply in Supp. of Defs.' Mot. for Summ. J. at 8) (Page ID #1647).  The district court deemed Fitzgerald's qualified-immunity defense waived for the purposes of this motion.  R. 165 (09/25/19 Mem. of Op. & Order at 15) (Page ID #1687).

The district court granted two of the individual defendants' motions to dismiss the Eighth Amendment failure-to-protect claims based on qualified immunity.  *Id.* at 6–15 (Page ID #1678–87).  For Himmelreich's First Amendment retaliation claim against Fitzgerald, however, the district court concluded that Himmelreich had stated a cognizable *Bivens* damages action, and the court denied summary judgment on that claim.  *Id.* at 34 (Page ID #1706).

Fitzgerald appealed.  R. 166 (Not. of Appeal) (Page ID #1708).  Himmelreich, then *pro se*, filed a motion to stay proceedings because Fitzgerald had not paid her appellate fees.  *See* No. 19-4146, R. 11 (Appellee's Mot. at 2).  We denied Himmelreich's motion to stay proceedings without addressing the merits of his arguments.  No. 19-4146, R. 18 (03/03/2020 Order).

## II.  DISCUSSION

Himmelreich asserts that this appeal should be dismissed for lack of appellate jurisdiction and for nonpayment of appellate fees.  We agree with both of Himmelreich's arguments, although we will waive Fitzgerald's appellate fees in this instance.

## A.  Jurisdiction

We first "must determine that [we] have jurisdiction before proceeding to the merits" of Fitzgerald's appeal.  *Lance v. Coffman*, 549 U.S. 437, 439 (2007).  The district court had jurisdiction under 28 U.S.C. § 1331.  Our jurisdiction over Fitzgerald's appeal is somewhat

complicated, as it is an appeal from a non-final order.  Ultimately, we conclude that we do not have jurisdiction over Fitzgerald's appeal, and thus, we do not reach the merits of the district court's order recognizing a *Bivens* remedy for First Amendment retaliation.

We have jurisdiction over "appeals from all final decisions of the district courts." 28 U.S.C. § 1291.  "Ordinarily, the denial of a motion for summary judgment is an unappealable interlocutory ruling."  *Peterson v. Heymes*, 931 F.3d 546, 553 (6th Cir. 2019).  There is, however, "'a narrow class of decisions that do not terminate the litigation,' but are sufficiently important and collateral to the merits that they should 'nonetheless be treated as final.'"  *Will v. Hallock*, 546 U.S. 345, 347 (2006) (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994)).  The collateral order doctrine applies only to decisions that:  (1) "are conclusive"; (2) "resolve important questions separate from the merits"; and (3) "are effectively unreviewable" if not reviewed on interlocutory appeal.  *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995)).  We determine the applicability of the collateral order doctrine "for the entire category to which a claim belongs, without regard to the chance that the litigation at hand might be speeded, or a particular injustice averted by a prompt appellate court decision."  *Digital Equip.*, 511 U.S. at 868 (internal citation, quotation marks, and alteration omitted).  The Supreme Court has "repeatedly stressed that the 'narrow' exception should stay that way and never be allowed to swallow the general rule, that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated."  *Id.* (internal citations omitted).

Neither the Supreme Court nor this court (nor any other circuit, as far as we can tell) has considered whether an order denying summary judgment and allowing a new *Bivens* damages action to proceed is a collateral order subject to immediate appeal.  Defendants in *Bivens* actions will likely include a claim of qualified immunity in their motion for summary judgment.  Faced with this question of first impression, where the defendant has failed to raise a timely defense of qualified immunity, we hold that an interlocutory appeal from a district court order allowing a *Bivens* damages action to proceed does not come within the confines of the collateral order doctrine.

Fitzgerald ties our jurisdiction over her appeal to an appellate court's well-established authority to review immediately appeals of district-court decisions denying qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (concluding that a district court's denial of qualified immunity is a collateral order subject to immediate appeal "to the extent that it turns on an issue of law"). First, Fitzgerald argues that decisions about whether to recognize a *Bivens* damages action are directly implicated by qualified-immunity determinations, and thus may be reviewed on interlocutory appeal. Second, Fitzgerald argues that the same concerns that justified extending the collateral order doctrine to decisions denying qualified immunity support extending the doctrine to district-court decisions recognizing *Bivens* damages actions.

For this first argument, Fitzgerald relies on trio of Supreme Court opinions in which the Court extended an appellate court's authority to review immediately district court orders denying qualified immunity to include issues directly implicated by qualified-immunity determinations. In the first case, *Hartman v. Moore*, 547 U.S. 250 (2006), the Supreme Court concluded that appellate jurisdiction existed to review the issue of probable cause in a malicious-prosecution case where the district court had denied defendant's motion for summary judgment based on qualified immunity. In arguing that the Supreme Court and the Court of Appeals did not have appellate jurisdiction, the appellee contended "that an interlocutory appeal can be taken from the rejection of qualified immunity at the summary-judgment stage only on questions turning on the definition of the violation, not on the sufficiency of the evidence to show that a defendant is in fact entitled to the immunity claimed." *Id.* at 257 n.5. The Supreme Court rejected this reasoning, clarifying that it was "addressing a requirement of causation, which [the plaintiff] must plead and prove in order to win, and our holding does not go beyond a definition of an element of the tort, directly implicated by the defense of qualified immunity and properly before us on interlocutory appeal." *Id.*

In the second and most relevant case, *Wilkie v. Robbins*, 551 U.S. 537 (2007), the Supreme Court concluded that appellate jurisdiction existed to review on interlocutory appeal whether to recognize a new *Bivens* damages action as part of its review of the district court's decision denying qualified immunity. Quoting from *Hartman*, the Supreme Court noted that it "recognized just last Term that the definition of an element of the asserted cause of action was

'directly implicated by the defense of qualified immunity and properly before us on interlocutory appeal.'" *Id.* at 549 n.4 (quoting *Hartman*, 547 U.S. at 257 n.5). Accordingly, the Court concluded that the reasoning in *Hartman* as to elements of a cause of action applied equally to the "recognition of the entire cause of action." *Id.*

Finally, in *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009), the Supreme Court built upon *Hartman* and *Wilkie* and held that appellate jurisdiction existed to review on interlocutory appeal the adequacy of the pleadings where the district court had both denied the defendants' motion to dismiss for failure to state a claim and denied the defendants' qualified-immunity defense. *See id.* (stating that "the sufficiency of [Iqbal's] pleadings is both 'inextricably intertwined with,' and 'directly implicated by' the qualified-immunity defense." (quoting first *Swint*, 514 U.S. at 51, and second *Hartman*, 547 U.S. at 257 n.5)). These three cases stand for the proposition that an appellate court may review on interlocutory appeal decisions directly implicated by a district court's denial of qualified immunity.

In *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018), the Third Circuit noted that the defendants had appealed the district court's denial of qualified immunity, "[a]nd since the issue of whether a [*Bivens*] cause of action even exists . . . is a threshold question of law," it concluded that it "ha[d] jurisdiction to consider [the *Bivens* question] as well." *Id.* at 87 (quoting *Vanderklok v. United States*, 868 F.3d 189, 197 (3d Cir. 2017) (citing *Wilkie*, 551 U.S. at 549 n.4)). Fitzgerald argues that we should follow the Third Circuit's lead in concluding that we have jurisdiction over her appeal.

Fitzgerald, however, misunderstands the Supreme Court's reasoning in *Wilkie* and companion cases, and the Third Circuit's reasoning as to jurisdiction in *Bistrian*. In *Hartman*, *Wilkie*, and *Iqbal*, the appellate courts already had jurisdiction over the appeals challenging the district courts' denial of qualified immunity. Similarly, in *Bistrian*, the defendants asserted a defense of qualified immunity in their motion for summary judgment, and the district court denied the request for qualified immunity, concluding that the inmate had stated a cognizable *Bivens* damages action for First Amendment retaliation. 912 F.3d at 86. True, the Supreme Court in *Hartman*, *Wilkie*, and *Iqbal*, and the Third Circuit in *Bistrian*, did not reach the merits of the district court's denial of qualified immunity. In each case, however, the court anchored its

appellate jurisdiction in the defendants' appeal of the district court's denial of qualified immunity.  Where a defendant has not appealed the denial of qualified immunity, the appellate court does not have jurisdiction under the collateral order doctrine to address an underlying claim.  For instance, in *Vanderklok*, the Third Circuit concluded that it had appellate jurisdiction to review whether the plaintiff had a First Amendment right to be free from retaliation by TSA employees because the district court had denied qualified immunity on that claim, but the court concluded that it did not have appellate jurisdiction to review the district court's denial of summary judgment as to the plaintiff's Fourth Amendment malicious-prosecution claim because the defendants had not sought qualified immunity on this claim.  868 F.3d at 197.  As the Third Circuit wrote in *Vanderklok*, "[t]he fact that [defendant] was denied summary judgment on the merits of th[e] Fourth Amendment claim rather than on qualified immunity grounds deprives us of jurisdiction on interlocutory appeal, and we have no discretion to overlook that."  *Id.*

Here, for some unexplained reason, Fitzgerald did not raise qualified immunity as a defense in her motion for summary judgment.  Instead, Fitzgerald's sole argument in her motion for summary judgment as to Himmelreich's claim against her was that he had not established a cognizable *Bivens* remedy for First Amendment retaliation.  Thus, there is no qualified-immunity argument here that the question of whether to recognize a *Bivens* damages action could "directly implicate."

Seemingly recognizing that the predicate denial of qualified immunity is absent in this appeal, Fitzgerald changes tack and argues that in these cases discussed above the Court "implicitly recognized that its collateral-order jurisdiction . . . renders these orders [allowing *Bivens* claims to proceed], like outright denials of qualified immunity, appealable in their own right."  Fitzgerald Br. at 48.  Contrary to the government's position, Himmelreich suggests that the Supreme Court's decisions in *Hartman*, *Wilkie*, and *Iqbal* are an exercise of pendent appellate jurisdiction that bootstraps ancillary questions onto preexisting appellate jurisdiction over decisions denying qualified immunity.  Himmelreich Br. at 25–26 n.2.  But the Court did not mention pendent appellate jurisdiction in these cases.  Whatever the basis for the Supreme Court in recognizing appellate jurisdiction over matters directly implicated by the denial of

qualified immunity, in each case there was a predicate denial of qualified immunity.  Here, there is no predicate denial of qualified immunity, and thus, Fitzgerald's argument fails.

Because the Supreme Court's decisions in *Hartman*, *Wilkie*, and *Iqbal* do not help Fitzgerald, we turn to whether the district court's order independently satisfies the three requirements of the collateral order doctrine.  For the purposes of this appeal we assume that the district court's order conclusively determines that Himmelreich has stated a cognizable *Bivens* remedy for First Amendment retaliation.  We also assume that the district court's order resolves an important question of the separation of powers that is separate from the merits of Himmelreich's First Amendment retaliation claim.  *See Ziglar v. Abassi*, 137 S. Ct. 1843, 1857 (2017).

We conclude, however, that the district court's order does not satisfy the third requirement, because we can adequately review the issue of a *Bivens* First Amendment retaliation claim on appeal from the final judgment.  Fitzgerald contends that "[t]he district court's order is effectively unreviewable on appeal from final judgment," because "the defendant's interest in being spared legally unwarranted litigation is 'effectively lost' if the case is allowed to proceed to trial."  Fitzgerald Br. at 43 (quoting *Mitchell*, 472 U.S. at 526).  For this factor, Fitzgerald argues that the same concerns that led the Supreme Court in *Mitchell* to permit interlocutory appeal of orders denying qualified immunity warrant permitting interlocutory appeals of decisions recognizing *Bivens* damages actions.  *Id.*  The Supreme Court in *Mitchell* characterized qualified immunity as "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law."  472 U.S. at 526.  As qualified immunity "is an *immunity from suit* rather than a mere defense to liability," the Supreme Court reasoned that the entitlement "is effectively lost if a case is erroneously permitted to go to trial."  *Id.* (emphasis in original).  Unlike qualified immunity, *Bivens* provides a plaintiff's remedy for unconstitutional conduct.  It does not grant defendants an entitlement not to stand trial.  To the extent that defendants are concerned about litigating meritless cases, qualified immunity more than adequately protects government officials from the burdens of litigation.

Fitzgerald also argues that collateral review of a district court order recognizing a *Bivens* action is appropriate for interlocutory appeal because it presents a purely legal question. Fitzgerald Br. at 50. In *Johnson v. Jones*, 515 U.S. 304 (1995), the Supreme Court declined to extend *Mitchell* to permit interlocutory appeal of a denial of qualified immunity where the district court had found that there was a genuine dispute of fact. The Supreme Court reasoned that "considerations of delay, comparative expertise of trial and appellate courts, and wise use of appellate resources argue in favor of limiting interlocutory appeals of 'qualified immunity' matters to cases presenting more abstract issues of law." *Id.* at 317. Taken to its logical conclusion, Fitzgerald's overreaching interpretation of *Johnson* would permit interlocutory appeal of every order denying a motion for summary judgment on a legal issue.

Finally, Fitzgerald's argument that the collateral order doctrine extends to stand-alone appeals of district court orders recognizing a *Bivens* remedy also fails because it contravenes the Supreme Court's decision in *Will v. Hallock*, 546 U.S. 345 (2006). In *Will*, the plaintiffs had sued the United States under the FTCA for property damage. *Id.* at 347–48. The district court dismissed the plaintiffs' FTCA claim for lack of jurisdiction because the suit fell within the discretionary-function exception to the FTCA. *Id.* at 348. While the plaintiff's FTCA action was pending, the plaintiffs filed suit raising a *Bivens* claim for violation of their constitutional due process rights. *Id.* The government argued that the district court should dismiss the plaintiffs' constitutional suit because the judgment bar of the FTCA prohibits plaintiffs from bringing additional lawsuits when the district court has issued a judgment in an action under the FTCA. *Id.* The district court declined to dismiss the plaintiffs' *Bivens* suit, and the Second Circuit affirmed. *Id.* at 348–49. The Supreme Court declined to extend the collateral order doctrine to allow an immediate appeal from a district court order rejecting the judgment bar of the FTCA as a defense to a *Bivens* action. *Id.* at 355. The Court reasoned that the district court's order allowing the *Bivens* claim to proceed was not effectively unreviewable because the government did not have an absolute right to avoid trial. *Id.* at 353. If that were the case, then the "collateral order appeal would be a matter of right whenever the Government lost a motion to dismiss under the Tort Claims Act, or a federal officer lost one on a *Bivens* action, or a state official was in that position in a case under 42 U.S.C. § 1983, or *Ex parte Young*, 209 U.S. 123 (1908)." *Id.* at 353–54. As the *Will* Court noted, "In effect, 28 U.S.C. § 1291 would fade out

whenever the Government or an official lost an early round that could have ended the fight." *Id.* at 354. Here, although Fitzgerald has lost the motion for summary judgment on a *Bivens* claim, *Will* does not recognize an absolute right for her to avoid trial.

We can effectively review whether the district court properly recognized a *Bivens* damages action after a final judgment in Himmelreich's case. Indeed, the Supreme Court has reviewed a district court's recognition of a *Bivens* remedy after a jury verdict and final judgment. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 474 (1994). Accordingly, we conclude that the collateral order doctrine does not permit immediate review of a district-court order denying summary judgment to a defendant facing a *Bivens* First Amendment retaliation claim, absent the jurisdictional hook of an appeal of a denial of qualified immunity. We thus do not reach the merits of Fitzgerald's challenge to the district court's order recognizing a *Bivens* remedy for First Amendment retaliation. Fitzgerald lost her motion for summary judgment, and we will not permit her to bypass the final-decision requirement of 28 U.S.C. § 1291 and seek immediate interlocutory appeal. *Cf. Himmelreich v. United States*, No. 10-4052 (6th Cir. May 19, 2011) (order) (dismissing for lack of jurisdiction).

## B.  Appellate Fees

Himmelreich poses a novel question of whether a *Bivens* defendant sued in her individual capacity but represented by the U.S. Department of Justice ("DOJ") is required to pay appellate fees. *See* No. 19-4146, R. 11 (Appellee's Mot. at 2). We conclude that Fitzgerald, as a *Bivens* defendant sued in her individual capacity, is required to pay appellate fees even though the Department of Justice represents her on appeal. Given our lack of jurisdiction over her appeal and the novelty of the issue, we will waive[1] her appellate fees in this instance.

We appear to be in uncharted waters on this issue of appellate fees. We have not found— and the parties have not cited—any case where a court has addressed whether a *Bivens* defendant sued in her individual capacity, but represented by the DOJ, must pay an appellate fee. To our

---

[1]An appellant's late payment of appellate fees is not a jurisdictional defect, *see Parissi v. Telechron, Inc.*, 349 U.S. 46, 47 (1955); Fed. R. App. P. 3 (commentary to the 1979 amendments) (recognizing that "the case law indicates that the failure to prepay the statutory filing fee does not constitute a jurisdictional defect"), and thus, we may waive the requirement.

knowledge, our court has not adopted a formal policy regarding payment of appellate fees by *Bivens* defendants who are represented by the Department of Justice.

In the absence of formal policy or legal justification, Fitzgerald's counsel states that "the Department of Justice frequently represents government employees sued in their individual capacities in *Bivens* cases, and we are unaware of any case in which such a defendant has paid a filing fee." Fitzgerald Br. at 52. It appears that in the past we have waived the appellate fees of *Bivens* defendants who are represented by the Department of Justice. *See, e.g.*, Docket, *Merriweather v. Zamora*, No. 08-1570 (fee waived); Docket, *Abel v. Harp*, No. 06-4371 (same); Docket, *Shehee v. Luttrell*, No. 98-5614 (same). The Department of Justice's and our court's practices, undertaken without introspection, do not control whether *Bivens* defendants are required to pay appellate fees when represented by the DOJ. Instead, we must consider in the first instance whether this practice is consistent with the federal statutes governing appellate fees.

Appellants generally are required to pay fees and costs upon filing an appeal. Title 28 U.S.C. § 1917 states that "[u]pon the filing of any separate or joint notice of appeal . . . $5 shall be paid to the clerk of the district court, by the appellant or petitioner." In addition to this $5 fee, Congress provides that the Judicial Conference of the United States shall prescribe "fees and costs to be charged and collected in each court of appeals." 28 U.S.C. § 1913. "Such fees and costs shall be reasonable and uniform in all the circuits." *Id.*; *See also* Fed. R. App. P. 3(e) ("Upon filing a notice of appeal, the appellant must pay the district clerk all required fees. The district clerk receives the appellate docket fee on behalf of the court of appeals."). Typically, if an appellant does not pay the appellate fees or obtain leave to appeal in forma pauperis, then we will dismiss the appeal for want of prosecution.[2]

Congress has permitted some exceptions to the general rule that appellants are required to pay appellate fees. The notes to § 1913 clarify that "[t]he United States should not be charged fees under this schedule." Further, "[i]nsolvent litigants, including prisoners, may request permission to proceed without initially paying a filing fee, a benefit that comes with *in forma*

---

[2]Himmelreich is familiar with this consequence of failure to pay appellate fees. *See Himmelreich v. United States*, No. 10-4593 (6th Cir. Mar. 6, 2012) (order) (dismissing appeal for failure to pay appellate fee); *Himmelreich v. United States*, No. 10-4052 (6th Cir. Nov. 24, 2010) (order) (same).

*pauperis* status." *Simons v. Washington*, 996 F.3d 350, 352 (6th Cir. 2021) (citing 28 U.S.C. § 1915(a)–(b)). Fitzgerald has not sought in forma pauperis status. We thus consider whether Fitzgerald, sued in her individual capacity but represented by the DOJ, is akin to "the United States" for the purpose of appellate fees.

At the outset, Fitzgerald argues that a *Bivens* suit against a defendant sued in her individual capacity "is not an ordinary action against a private party," because the plaintiff is challenging the defendant's conduct while "acting under color of federal law." Fitzgerald Br. at 53. By representing a *Bivens* defendant, the Department of Justice is confirming that the conduct in question "reasonably appear[s] to have been performed within the scope of the employee's employment" and that "providing representation . . . [is] in the interest of the United States." 28 C.F.R. § 50.15(a). Here, Fitzgerald was a federal employee at the time of her alleged retaliation against Himmelreich for exercising his First Amendment rights. The DOJ also determined that representing her was in the interest of the United States. Despite the DOJ's determination that it was appropriate to represent Fitzgerald in this case, she remains sued in her individual capacity, not in her official capacity.

Some statutes and appellate rules treat *Bivens* defendants like government parties for the purposes of appellate filing deadlines. Title 28 U.S.C. § 2107(b), for instance, provides that when an action involves "the United States," "a United States agency," "a United States officer or employee sued in an official capacity," and "a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on behalf of the United States," all parties are permitted sixty days from the entry of judgment to file a notice of appeal. *See also* Fed. R. App. P. 4(a)(1)(B). This extension of time applies in individual-capacity suits in "all instances in which the United States represents that officer or employee when the judgment, order, or decree is entered or files the appeal for that officer or employee." 28 U.S.C. § 2107(b)(4). Likewise, Rule 40 of the Federal Rules of Appellate Procedure uses similar language to permit all parties forty-five days to file a petition for rehearing in cases involving such governmental defendants. Fed. R. App. P. 40(a)(1).

These statutes and rules extending preferential filing deadlines to cases involving *Bivens* defendants sued in their individual capacities do not support exempting them from appellate fees.

At the outset, we note that these statutes and rules explicitly involve appellate filing deadlines, not appellate fees. These statutes undercut Fitzgerald's argument because they treat "the United States" and federal employees sued in their individual capacities as distinct by listing them as separate groups entitled to longer appellate filing deadlines. Further, they demonstrate that Congress is aware of how to articulate that appellate procedures apply in cases of federal employees sued in their individual capacities but chose not to do so for appellate fees. Thus, the statutes and rules upon which Fitzgerald relies do not help her.

In other contexts, Congress has distinguished between federal employees sued in their official capacities and those sued in their individual capacities. For instance, in 28 U.S.C. § 2412(a)(1), which governs the allocation of costs and fees when the United States is a party to litigation, Congress stated that the statute applies only to "any civil action brought by or against the United States or any agency or any official of the United States acting in his or her *official capacity*." (emphasis added). Thus, for the purpose of allocating fees and costs, Congress does not consider *Bivens* defendants sued in their individual capacities as the United States. The Supreme Court interpreted another statute, 28 U.S.C. § 1391(e), which provides certain venues for civil actions against "a defendant [who] is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States," to exclude civil actions brought against federal employees or officials in their individual capacities. *Stafford v. Briggs*, 444 U.S. 527, 542 (1980). The Supreme Court reasoned that "[a] suit for money damages which must be paid out of the pocket of the private individual who happens to be—or formerly was—employed by the Federal Government plainly is not one 'essentially against the United States,' and thus is not encompassed by the venue provisions of § 1391(e)." *Id*. These statutes support our conclusion that "the United States," for the purposes of § 1913, does not include federal employees or officials sued in their individual capacities.

Requiring that all federal employees or officials sued in their individual capacities pay appellate fees also avoids treating litigants differently based on their legal representation. A bright-line rule that *Bivens* defendants sued in their individual capacities must pay appellate fees is appropriate because a party's legal counsel can change during *Bivens* litigation. In the

past, we have waived the appellate fees of parties initially represented by the Department of Justice but who were later represented by private counsel for most of the litigation. *See, e.g.*, Docket, *Holder v. Saunders*, No. 15-6305 (waiving fee even though the U.S. Attorney's Office withdrew its representation prior to briefing); Docket, *Al-Bari v. Guider*, No. 96-6707 (same). We see no reason that courts should treat *Bivens* defendants represented by the DOJ differently than those represented by private counsel for the purposes of appellate fees. In both circumstances, the *Bivens* defendant is a person sued in her individual capacity.

The use of "United States" in the notes to § 1913 is best read to exclude *Bivens* defendants sued in their individual capacities. Accordingly, although we waive Fitzgerald's appellate fees in this case, a *Bivens* defendant sued in her individual capacity generally is required to pay appellate fees when she files an appeal.

## III. CONCLUSION

For the foregoing reasons, we **DISMISS** Fitzgerald's appeal for lack of appellate jurisdiction because her appeal concerns neither a final order nor a non-final order entitled to review under the collateral order doctrine. Given that we dismiss Fitzgerald's appeal for lack of appellate jurisdiction, we waive appellate fees with respect to her appeal.